UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BOB BRISSON,

      Plaintiff,

v.                                      Case No. 3:14cv6/CJK

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## MEMORANDUM ORDER

      This case is before the court pursuant to 42 U.S.C. § 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Bob Brisson's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34. The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c) and FEDERAL RULE OF CIVIL PROCEDURE 73 for all proceedings in this case, including entry of final judgment. Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner, therefore, will be affirmed.

## ISSUE ON REVIEW

      Plaintiff, who will be referred to as claimant, plaintiff, or by name, alleges a single issue on appeal - that the ALJ failed to give good cause for her decision to discount the opinion of plaintiff's treating physician.

Case No. 3:14cv6/CJK

PROCEDURAL HISTORY

Claimant applied for DIB on April 14, 2011, alleging disability beginning on June 14, 2009.[1]  T. 137-47.[2]  His application initially was denied, and the denial was upheld on reconsideration.  T. 66-75.  Claimant filed a request for a hearing on August 4, 2011.  T. 76-77.  His request was granted, and a hearing was conducted on September 14, 2012.  T. 35-57.  On October 24, 2012, the Administrative Law Judge ("ALJ") issued a decision, finding plaintiff not disabled as defined by the Act.  T. 16-34.  On November 2, 2012, plaintiff requested review by the Appeals Council, which denied his request.  T. 1-6, 13-15, 209-214.  The ALJ's decision thus became the final determination of the Commissioner.

FINDINGS OF THE ALJ

In her written decision, the ALJ made a number of findings relative to the issue raised in this appeal:

•      "The claimant last met the insured status requirements of the Social Security Act on June 30, 2011."  T. 21.

•      "The claimant did not engage in substantial gainful activity during the period from his alleged onset date of June 14, 2009 through his date last insured of June 30, 2011 (20 CFR 404.1571 *et seq.*)."  T. 21.

---

[1] Plaintiff initially alleged an onset date of December 14, 2004, T. 139, but later amended it to June 14, 2009. T. 146.  Plaintiff's date last insured, or the date by which his disability much have commenced to receive DIB, is June 30, 2011.  T. 21

[2] The administrative record, as filed by the Commissioner, consists of eleven volumes (docs. 7-1 through 7-11) and has 459 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

Case No. 3:14cv6/CJK

- "Through the date last insured, the claimant had the following severe impairments: history of lumbar fusion; bilateral carpal tunnel syndrome with surgery on left; status post left shoulder rotator cuff repair; left toe pin placement; arthritis; neuropathy, status post ulnar nerve repair left arm; anxiety; depression; and degenerative disc disease of the cervical spine. (20 CFR 404.1520(c))."  T. 21.

- "Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."  T. 22.

- "[T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting and carrying 10 pounds frequently and 20 pounds occasionally; sitting for a total of 6 hours during an 8-hour workday; standing and walking for a total of 4 hours each during an 8-hour workday; occasionally using the left upper and lower extremities to push and pull; frequently using the right upper and lower extremities to push and pull; frequently balancing; occasionally stooping, kneeling, crouching, crawling, and climbing ramps and stairs; never climbing ladders, ropes and scaffolds; occasionally reaching overhead with the left upper extremity; frequently reaching overhead with the right upper extremity; frequently handling, fingering and feeling; precluded from exposure to extreme heat and cold; no work around unprotected heights or dangerous machinery; able to perform simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes; and able to sustain concentration and attention for 2 hours."  T. 22-23.

•      "Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565)."  T. 28.

•      "Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a))."  T. 29.

•      "The claimant was not under a disability, as defined in the Social Security Act, at any time from June 14, 2009, the alleged onset date, through June 30, 2011, the date last insured (20 CFR 404.1520(g))."  T. 29.

## FACT BACKGROUND AND MEDICAL HISTORY[3]

At the time of the hearing, claimant was forty-seven years old, had completed high school and one year of college, and had past relevant work as a watch salesman, pipe layer, assistant manager at a pawn shop, and house carpenter.  T. 39-40, 51-52. With the exception of a brief two-week period in 2010, plaintiff last worked in June 2009.  T. 39-40.  Plaintiff testified that he was able to mow his lawn with the help of his eighteen-year-old child, although it took him two to three hours to complete the task because of his need for frequent rest breaks.  T. 46, 48.  Plaintiff attended three or four baseball games during the Wahoos' 2012 season; he spent the majority of the time walking around.  T. 49.  He also went to the beach two or three times that year. T. 49.  He was able to prepare breakfast and grocery shop with the help of his wife and child and pay bills.  T. 47-48.  Approximately once every three weeks, claimant

---

[3] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  Although intended to be thorough and to provide an overview of the claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

Case No. 3:14cv6/CJK

visited his mother-in-law, who lived half a block from his home.  T. 48-49.  Claimant testified he could lift approximately ten pounds and could walk, sit, and stand for less than an hour at a time each.  T. 50.  When asked by the ALJ to rate his average pain on a scale of one to ten, claimant said it typically was a six or seven.  T. 46.  Claimant considered himself disabled because he has "too many physical problems with [his] body," including his back, arms, feet, and legs, as well as "a lot of forgetfulness," and "can't stay on task any longer due to [his] injuries in the past."  T. 41.

Plaintiff had at least five surgeries prior to his date last insured, including a left shoulder rotator cuff repair in the 1980s; left carpal tunnel release in 2007; back surgery in 2004 and 2007; ligament repair on the second toe of his left foot in 2010, and left ulnar nerve surgery on an unknown date in the distant past.  T. 24, 219, 367, 448, 457.  At the time of the hearing, plaintiff's primary care physician was Anju Garg, M.D., at Affordable Medical Clinic, who treated plaintiff for lumbar back pain, left shoulder pain, neck pain, bilateral carpal tunnel syndrome, left ulnar neuropathy, left foot pain, rheumatoid arthritis, depression, anxiety, and right inguinal hernia.  T. 45, 429, 453-54.  Dr. Garg prescribed plaintiff pain medication and muscle relaxers, and administered trigger point injections.  T. 45, 429, 453-54.  On August 21, 2012, Dr. Garg completed an Assessment of Physical Residual Functional Capacity, indicating that, in an eight-hour work day, plaintiff could sit and stand for one to two hours and walk for less than one hour.  T. 451.  Dr. Garg opined plaintiff could occasionally lift less than five pounds and could not bend or climb stairs or ladders. T. 451.  According to the assessment, claimant suffered from depression and anxiety as a result of chronic pain syndrome.  T. 452.  Plaintiff required at least a thirty minute rest period every three to four hours and would experience drowsiness and

inattentiveness as a result of his medications.  T. 452.  Dr. Garg concluded plaintiff was disabled from full-time continuous employment and his conditions were expected to last for more than a year.  T. 452.

Michael Kasabian, D.O., performed a consultative examination of plaintiff on July 7, 2011.  T. 360-69.  Dr. Kasabian found that plaintiff had a "probable history of hypertension" and pain in various areas, including his low back, hips, shoulders, and left foot.  T. 364.  Dr. Kasabian completed a Range of Motion Report Form on July 7, 2011, indicating plaintiff had considerably restricted motion in his cervical and lumbar spine, right and left shoulder, and hip. T. 361-62.

Sue Berthaume, a vocational expert, testified at the hearing.  T. 51-56.  The ALJ posed the following hypothetical to Ms. Berthaume:

> Hypothetical number one, let's assume an individual the claimant's age, education, and vocational experience who would be able to lift and carry 10 pounds frequently, 20 pounds occasionally, sit for a total of six hours throughout the eight-hour workday, stand and walk for a total of four hours each throughout the eight-hour workday.  With regard to the left upper extremity able to occasionally push and pull, the right upper extremity able to frequently push and pull, the left lower extremity occasionally push and pull, the right lower extremity frequently push and pull.  So the left upper and lower are both occasional.  The right upper and lower are both frequent. Okay? Frequently able to balance, occasionally able to stoop, kneel, crouch, crawl, and climb ramps and stairs, precluded from climbing ladders, ropes, and scaffolds.  Reaching overhead on the left would be occasional and the right would be frequent, able to frequently handle, finger, and feel.  No exposure to extreme heat or cold or vibration, no exposure to unprotected heights or dangerous machinery, who

> performed unskilled work, simple, routine tasks involving
> no more than simple, short instructions, simple work
> related decisions, few workplace changes, the same
> concentration and attention for two hour periods.

T. 52-53.  When asked whether an individual with those limitations would be able to perform any of claimant's past work, the vocational expert responded "[n]o, ma'am." T. 53.  When asked whether there would be other jobs in the national or regional economy that such an individual could perform, the vocational expert responded in the affirmative, testifying that such an individual could work as a production assembler, cashier, and information clerk.   T. 53-54.

The ALJ posed a second hypothetical to the vocational expert, incorporating a sit/stand option every forty-five minutes at will.  T. 54.  When asked whether that changed or modified the vocational expert's testimony regarding hypothetical number one, the vocational expert responded that the individual could still work as an information clerk but not as a cashier.  T. 54.  According to the vocational expert, the individual could perform the production assembler job with the numbers reduced by approximately fifty percent and work as a microfilm processor and surveillance system monitor.[4]  T. 54.

The ALJ posed a third hypothetical, incorporating plaintiff's testimony and Dr. Garg's opinion.  T. 55.  The vocational expert testified that such an individual would not be able to perform any of claimant's past work or other work in the national or

---

[4] Presumably, in testifying that the hypothetical individual could work as a production assembler with the numbers reduced by approximately fifty percent, the vocational expert meant there would be approximately only half as many production assembler jobs available to the hypothetical employee.

Case No. 3:14cv6/CJK

regional economy.  T. 55.

STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said that "'[s]ubstantial evidence is more than a scintilla . . . .'"  *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (*quoting Lewis*, 125 F.3d at1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, therefore, "it cannot stand with a 'mere scintilla' of support." *See Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  A reviewing court also may not look "only to those parts of the record which support

the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *See Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[5]

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do his previous work, "but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

---

[5] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

3.   If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.   If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.[6]

5.   Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

"[R]esidual functional capacity is the most [claimant] can still do despite [claimant's] limitations."[7]  20 C.F.R. § 404.1545(1).  The ALJ establishes residual

---

[6] Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  *See Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[7] In addition to this rather terse definition of residual functional capacity, the Regulations describe how the Commissioner makes the assessment:

(3) Evidence we use to assess your residual functional capacity.  We will assess your residual functional capacity based on all of the relevant medical and other evidence.  In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity.  (See § 404.1512(c).)  However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources.  (See §§ 404.1512(d) through (f).)  We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations.  (See § 404.1513.)  We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your

functional capacity, utilizing the impairments identified at step two, by interpretation of (1) the medical evidence, and (2) the claimant's subjective complaints (generally complaints of pain).  Residual functional capacity is then used by the ALJ to make the ultimate vocational determination required by step five.[8]  Often, both the medical evidence and the accuracy of a claimant's subjective complaints are subject to a degree of conflict and that conflict leads, as in this case, to the points raised on judicial review by the disappointed claimant.

ANALYSIS

Claimant argues that the ALJ erred in giving "no weight" to Dr. Garg's opinions and in failing to give good cause for her decision in that regard.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-61 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips,* 357 F.3d at 1241; *see*

---

symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons.  (See paragraph (e) of this section and § 404.1529.)[.]

20 C.F.R. § 404.1545(a)(3).

[8] "Before we go from step three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.)  We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."  20 C.F.R. § 404.1520(a)(4).

*also Lewis*, 125 F.3d at 1440 (citing cases).  If a treating physician's opinion as to the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ is to give it controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2).  Where a treating physician has merely made conclusory statements, however, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  In any event, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x. 875, 877 (11th Cir. 2013).

The law concerning conclusory statements is particularly applied where a doctor, even one who has treated the claimant, expresses opinions on a preprinted or "check-off" form.  Such opinion evidence will not bind the Commissioner.  Indeed, courts have found that such preprinted forms do not provide persuasive evidence of the validity of the opinions expressed therein.  *See Hammersley v. Astrue*, No. 5:08-cv-245-Oc-10GRJ, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("Check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions." (*citing Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993))).  Although such forms are admissible, "they are entitled to little weight and do not constitute 'substantial evidence' on the record as a whole."  *O'Leary v. Schweiker*, 710 F. 2d 1334, 1341 (8th Cir. 1983).

Here, the ALJ gave no weight to the opinions of Dr. Garg, finding them unsupported by his treatment records and inconsistent with plaintiff's reported activities of daily living. T. 26. According to the ALJ,

> [w]hile Dr. Garg's treatment notes do show some loss of motion of the back and neck, positive tenderness of the neck, back, and left shoulder, loss of motion of the left shoulder and positive tenderness of the left toe, he also noted that the claimant had no neurological deficits, i.e., he had normal motor strength and sensation in the upper and lower extremities. Dr. Garg also provided no updated radiology reports to support his findings. In addition, his opinion is inconsistent with the claimant's own reports that he attends professional baseball games (3 to 4 this year already), grocery shops, cuts his grass using a push mower, which takes 2 to 3 hours with breaks, and walks to visit family. It is also significant to note that Dr. Garg is not an orthopedic specialist, but rather just a family doctor, and he had not referred the claimant to an orthopedic specialist. He has also not recommended pain treatment to date.

T. 26-27.

Contrary to plaintiff's assertions, the ALJ plainly stated with particularity the weight assigned to Dr. Garg's opinions and the reasons therefor. Moreover, the ALJ's decision is supported by substantial evidence. Notably, Dr. Garg never treated plaintiff before plaintiff's date last insured. T. 427-30, 453-59. Dr. Garg's opinions thus shed little light on plaintiff's status or condition during the relevant time period. Moreover, Dr. Garg's opinions were expressed on a Residual Functional Capacity assessment, which is a pre-printed, check-off form. As a result, they are entitled to little weight. In addition, as the ALJ found, Dr. Garg's own treatment notes undermine the opinions Dr. Garg expressed in the Physical Residual Functional

Capacity assessment.  In June 2012, after plaintiff's date last insured, Dr. Garg indicated plaintiff had no joint swelling, normal range of motion, and normal motor and sensory exams.  T. 427, 429.  Although Dr. Garg noted tenderness and decreased range of motion in July, August, and September 2012, he also noted plaintiff had a normal neurological exam, including motor, sensory, and reflexes.  T. 453, 455, 457, 459.  Those findings were consistent with those of Manuel Abendan, M.D., another treating physician, who recorded normal neurological exams in July and August 2011, including normal motor, sensory, gait, and nerve exams.[9]  T. 403, 405.  They likewise were consistent with the opinions of Michael E. Kasabian, D.O., a consultative examiner, who found claimant had normal grip dexterity, 5/5 muscle strength, could stand on his heels and toes, and had a negative straight leg raise test in the supine position.[10]  T. 364.  Furthermore, the state agency physician, who is considered an expert in the field, opined on July 29, 2011, that plaintiff could perform a full range of light work.  T. 380-81.  *See* 20 C.F.R. § 404.1527(f)(2)(I); SSR 96-6p.  Plaintiff's activities of daily living, as discussed above, also belie his claim of disability. Finally, to the extent claimant proposes that the AL should have accepted Dr. Garg's opinion on the ultimate issue of disability, claimant is mistaken, as that decision is for the Commissioner alone to make.  *See Denomme*, 518 F. App'x. 875, 877-78;   20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

---

[9] Dr. Abendan observed some decreased motion of the spine with pain and advised plaintiff to seek treatment from a pain specialist.  T. 403, 405.  There is no indication plaintiff sought such treatment.

[10] Dr. Kasabian also noted reduced range of motion in Plaintiff's back.  Tr. 361.

**ACCORDINGLY, it is ORDERED:**

1.  The decision of the Commissioner is AFFIRMED and plaintiff's application for Disability Insurance Benefits is DENIED.

2.  The clerk is directed to close the file.

**DONE AND ORDERED** this 5th day of March, 2015.


/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**